# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

THEODORE W. SMITH, III,

                 Petitioner,          :     Case No. 3:16-cv-308

     - vs -                              District Judge Walter Herbert Rice
                                            Magistrate Judge Michael R. Merz

RONALD ERDOS, Warden,
 Southern Ohio Correctional Facility

                                :

                Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is a habeas corpus case brought by Petitioner Theodore Smith pro se under 28 U.S.C. § 2254. After initial review of the Petition (ECF No. 1-1), the Court ordered Respondent to file an answer and the state court record, which has been done (ECF Nos. 8, 9). Petitioner has now filed a Response to the Return of Writ (ECF No. 10), making the case ripe for decision.

Mr. Smith seeks relief from his kidnapping convictions in the Montgomery County Common Pleas Court in June 2014. He pleads the following grounds for relief:

> **Ground One:** Double Jeopardy
>
> **Supporting Facts:** August 25, 2008, I was acquitted of Count II kidnapping of Cassie Davis 2905.01(A)(2). May 2, 2014, I was retried/convicted of the Count I kidnapping of Cassie Davis 2905.01(A)(3). Both forms of kidnapping resulted from a State allied offense. Both Count I and Count II relied upon the same evidence to sustain them (at trial). Thus, they are the same offense for the purpose of double jeopardy protections.
>
> **Ground Two:** Trial court lacked subject matter jurisdiction.

**Supporting Facts:** Because of prior acquittal on the Count I kidnapping of Cassie Davis the trial court lacked jurisdiction to try the case a second time.

(Petition, ECF No. 1-1, PageID 17, 19.)

## Procedural History

The procedural history of this case is quite lengthy and complex. The portions essential to deciding this case were recited by the Ohio Second District Court of Appeals in its most recent decision on this case:

### I. Background

*The crime*

[*P2] Cassie Davis testified that on November 28, 2007, around 9:00 a.m. Smith woke her up by dragging her by the hair down the hallway of her apartment into the living room. Smith then tossed her on the couch. Davis's 18-month-old son was in his crib screaming, so Davis went to the child's room, with Smith following closely. She picked up her son and sat down. Smith told her to "'[f]ix it. Shut him up now.'" (Trial Tr. 132). Davis said that the child was hungry, so Smith allowed Davis to go into the kitchen and get a bottle. After Davis fed her son, she put him in front of the television to watch cartoons. She sat down, and Smith asked her, "'Where's Anthony?'" (*Id.* at 133). Davis told Smith that she did not know where Anthony was. Smith then said, "'Well, Anthony owes me some money.'" (*Id.*). At this point, Davis was "scared out of [her] mind." (*Id.*).

[*P3] Davis testified that while she was talking to Smith, he was standing in her living room blocking the front door—the only door to the apartment. Davis reminded Smith that she had talked to Anthony the previous night and gave him Smith's number. Smith said, "'Well, he's not there. I can't find him. He owes me money. And if I don't get my money from him, I'm going to get it from you.'" (*Id.* at 134). Davis testified that Smith kept threatening her and demanding money from her. At one point Smith said, "'I

2

should hurt you right now.'" (*Id.* at 143). Davis said, "'No, no.'" (*Id.*). Smith then said, "'Well * * * [y]ou better get my money. I want my money.'" (*Id.*).

[*P4] Wanting to get to a phone and call 911, Davis lied and told Smith that she worked at Lee's Chicken and had to call there to see about her paycheck. Davis did not have a phone in her apartment. She told Smith that her sister, who lived in a downstairs apartment, had a phone. Smith told her to go use the phone. Davis grabbed her son and started walking towards the door. But Smith stood in front of her, pointed to the boy, and said, "'You're not taking him.'" (*Id.* at 146). Smith then grabbed Davis's arm and led her to the couch, where she sat down. Smith went into the kitchen and grabbed a knife. When he came back, Smith held the knife about six inches from her son's throat and said, "'If you don't come back with my money, I'm going to hurt him.'" (*Id.* at 147).

[*P5] Smith led Davis to the door and pushed her out. She ran downstairs to her sister's apartment and started banging on the door. When her sister opened the door, Davis told her, "'There's somebody in my apartment. He's going to hurt [my son].'" (Trial Tr. 147). Davis ran to the phone and called 911. Afterwards, she then went back upstairs to her apartment.

[*P6] Smith asked Davis where her check was. She told him that she had to go and get it. Davis said that she had to call first and that her sister was on her phone. She asked Smith if she could use his phone. Smith told her that she had to be quick using his phone because he was on a minute phone. As Davis walked to the kitchen, the police burst into the apartment.

[*P7] Davis testified that Smith was in her apartment that day for about three hours. And while she was in the apartment Smith was never more than six feet away from her.

*The charged offenses*

[*P8] Smith was indicted on one count of kidnapping with purpose to terrorize or to inflict serious physical harm, in violation of R.C. 2905.01(A)(3) (Count I); one count of kidnapping to facilitate the offense of aggravated robbery, in violation of R.C. 2905.01(A)(2) (Count II); one count of aggravated robbery with a deadly weapon, in violation of R.C. 2913.01(K) and 2911.01(A)(1) (Count III); and one count of kidnapping of a person under the age of thirteen with purpose to hold for ransom or as a shield or hostage, in violation of R.C. 2905.01(A)(1) (Count IV).

3

*Smith's original trial and appeal*

[**\*P9**] Following a jury trial, Smith was convicted on Counts I and IV and on Count II's lesser-included offense of unlawful restraint. He was found not guilty on the indicted kidnapping charge in Count II and the charge in Count III. Smith was sentenced to a total of 15 years in prison. On appeal, we reversed his convictions because there had been a violation of his constitutional right to confront one of the witnesses against him. *State v. Smith*, 2d Dist. Montgomery No. 22926, 2010-Ohio-745.

*Smith's second trial and appeal*

[**\*P10**] Following a second jury trial, Smith was again convicted on Counts I and IV and on Count II's lesser-included offense. He was again sentenced to 15 years in prison. On appeal, Smith's appointed counsel filed a brief under *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that he could find no potential assignments of error having arguable merit. We agreed and affirmed. *State v. Smith*, 2d Dist. Montgomery No. 24402, 2012-Ohio-734.

*Smith's reopened appeal*

[**\*P11**] Smith moved to reopen his second appeal under App.R. 26(B), arguing that his prior appellate counsel was ineffective for not raising certain assignments of error having potential merit. We agreed and reopened the appeal. We then reversed his convictions because the trial court erroneously excluded a prospective juror. *State v. Smith*, 2d Dist. Montgomery No. 24402, 2013-Ohio-1586.

*Smith's third trial and current appeal*

[**\*P12**] The third time around, only Counts I and IV were tried to a jury. And a different judge presided over the case. The jury found Smith guilty on both counts, and the trial court imposed two concurrent 8-year prison terms.

[**\*P13**] Smith appealed, and the State cross-appealed. Smith's appointed appellate counsel filed a brief under *Anders* stating that he could find no potential assignments of error having arguable merit, and Smith filed a brief pro se. We appointed new appellate counsel, who filed a merit brief.

4

*State v. Smith,* 2016-Ohio-1269, 2016 Ohio App. LEXIS 1340 (2nd Dist. Mar. 25, 2016), appellate jurisdiction declined, 146 Ohio St. 3d 1430 (2016).


**Ground One:  Double Jeopardy**


In his First Ground for Relief, Mr. Smith asserts his conviction at his third trial on the charge of kidnapping Cassie Davis with purpose to terrorize or to inflict serious physical harm, in violation of R.C. 2905.01(A)(3), as charged in Count I of the indictment is precluded under the Double Jeopardy Clause of the Federal and Ohio Constitutions[1] by his acquittal at his first trial on the charge of kidnapping Cassie Davis to facilitate the offense of aggravated robbery, in violation of R.C. 2905.01(A)(2) as charged in Count II.

Although the Court reads the Petition as preserving Smith's Ohio constitutional claim, the Court has no authority to grant relief on the basis of a state constitutional violations, assuming one occurred.  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1 (2010); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982); *Barclay v. Florida*, 463 U.S. 939 (1983).    "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

---

[1]  As a pro se litigant, Mr. Smith is entitled to a liberal reading of his pleadings.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *McNeil v. United States*, 508 U.S. 106, 113 (1993).  The Petition mentions "double jeopardy protections" and Smith made an Ohio constitutional argument in the state courts.  The Court presumes he did not intend to abandon it and indeed he argues that claim in his Response (ECF No. 10, PageID 775-77).

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 785 (2011); *Brown v. Payton*, 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor*, 529 U.S. 362, 379 (2000).

The Second District decided Mr. Smith's federal Double Jeopardy claim on the merits, writing:

### A. Double jeopardy

[*P15] The sole assignment of error alleges that Smith's convictions violate the Double Jeopardy clauses of U.S. Constitution and the Ohio Constitution.

[*P16] The Fifth Amendment guarantee against double jeopardy "consist[s] of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *N. Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). But "the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." [footnote omitted] (Citations omitted.) *Lockhart v. Nelson*, 488 U.S. 33, 38, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).

[*P17] The Double Jeopardy Clause encompasses the doctrine of collateral estoppel, under limited circumstances. In *Ashe v. Swenson*, 397 U.S. 436, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970), the U.S. Supreme Court held that "the Double Jeopardy Clause precludes the Government from relitigating any issue that was necessarily decided by a jury's acquittal in a prior trial." *Yeager v. United States,* 557 U.S. 110, 119, 129 S.Ct. 2360, 174 L.Ed.2d 78 (2009). The Court explained that "'when an issue of ultimate fact has once been determined by a valid and final judgment' of

6

acquittal, it 'cannot again be litigated' in a second trial for a separate offense." Id., quoting *Ashe* at 443. The Supreme Court of Ohio has adopted this concept. *State v. Thomas*, 61 Ohio St.2d 254, 400 N.E.2d 897 (1980), paragraph four of the syllabus (holding that "successive prosecutions [are] barred in certain circumstances where the second prosecution requires the relitigation of factual issues already resolved by the first"). The Ohio Supreme Court has said that "a person may not be subjected to multiple prosecutions when proof of the one offense is necessary, as a practical matter, to prove the other, and both completed offenses arose out of the same criminal conduct." Id. at 261. To determine what a jury "necessarily decided" when a previous acquittal is based on a general verdict, a court should "examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Ashe* at 444.

[*P18] Here, Smith contends that he should not have been retried on the kidnapping charges because they are the same offenses as the kidnapping charge that he was acquitted of.

[*P19] The conduct prohibited by the kidnapping statute is "remov[ing] another from the place where the other person is found or restrain[ing] the liberty of the other person" "by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means." R.C. 2905.01(A). To be guilty of kidnapping, one must engage in this prohibited conduct with one of the six purposes listed in the statute. Relevant here are the first three purposes:

(1) To hold for ransom, or as a shield or hostage;

(2) To facilitate the commission of any felony or flight thereafter;

(3) To terrorize, or to inflict serious physical harm on the victim or another.

R.C. 2905.01(A). Count I alleges that Smith's purpose in restraining Davis's liberty was to terrorize her. Count II alleges that his purpose in restraining Davis's liberty was to facilitate the commission of aggravated robbery. And Count IV alleges that Smith's purpose in restraining Davis's son's liberty was to hold him for ransom or as a shield or hostage. The jury in the first trial found

7

Smith not guilty of Count II. But that jury and two subsequent juries found him guilty of Counts I and IV.

[*P20] The prosecutions for Counts I and IV do not require relitigating any factual issue that the jury "necessarily decided" in Smith's favor when it found him not guilty of Count II. By finding him not guilty of Count II, the jury did not necessarily decide that Smith did not engage in the prohibited conduct (restraining Davis's liberty). Rather, the jury "necessarily decided" only that Smith's purpose in engaging in the prohibited conduct was other than to facilitate the commission of aggravated robbery. In other words, the jury could reasonably have grounded its verdicts solely on the issue of Smith's purpose. The jury found that Smith restrained Davis's liberty and that his purpose in doing so was to terrorize her (Count I), but not to facilitate the commission of aggravated robbery (Count II). And the jury found that Smith restrained Davis's son's liberty and that his purpose in doing so was to hold him for ransom or as a shield or hostage (Count IV).

[*P21] The prosecution for Counts I and IV did not require relitigating an issue that was necessarily decided by the jury's prior acquittal on Count II. Neither Count I nor Count IV charges the same offense as Count II. Therefore Smith's double-jeopardy protections were not violated.

[*P22] Appellant's sole assignment of error is overruled.

*State v. Smith, supra.*

To prevail on his federal Double Jeopardy claim, then, Mr. Smith must show the Second District's decision was contrary to or an objectively unreasonable application of clearly established United States Supreme Court law.

Mr. Smith makes an argument in his Response that Counts I and II of the Indictment, both charging kidnapping but with different purpose, are allied offenses of similar of similar import under Ohio Revised Code § 2941.25.   Under the Ohio Supreme Court's current interpretation of that statute in *State v. Johnson*, 128 Ohio St. 3d 153 (2010), Smith could be correct.  But the result of an allied offenses finding under § 2941.25 is that a person may be convicted of both but punished for only one of such offenses.  Smith was convicted of only one

8

of these hypothetically allied offenses so § 2941.25 would provide him with no relief. And in any event the questions of whether two offenses are allied for purposes of that statute is a question of Ohio law, not federal constitutional law. The question of whether two statutes are sufficiently different to permit conviction under both for Double Jeopardy purposes is determined by the different elements test. *United States v. Dixon*, 509 U.S. 688, 696 (1993); *Blockburger v. United States*, 284 U.S. 299, 304 (1932). The two portions of the kidnapping statute under which Mr. Smith was indicted have disparate elements, to wit, regarding the purpose of the offender, as the Second District found. Mr. Smith recognizes the applicability of *Dixon* and *Blockburger* in his Response (ECF No. 10, PageID 778). However, he argues that "the pertinent question is whether the Count II kidnapping of Cassie Davis and the Count I kidnapping of Cassie Davis are the same offense." *Id.* at PageID 780, arguing that both offenses have the same mens rea element of acting purposely.

The analysis cannot, however, stop at that point. The statues involved in Count I and in Count II require different purposes, to wit a purpose to "terrorize or to inflict serious physical harm" (Count I) or a purpose "to facilitate the offense of aggravated robbery" (Count II). Those are different elements under *Blockburger*.

An acquittal on Count II logically entails a jury finding that the State had not proven beyond a reasonable doubt that Smith kidnapped Davis with the purpose of committing an aggravated robbery. That is not inconsistent with finding the State had proved beyond a reasonable doubt that he acted with the purpose of terrorizing her. Thus the Second District's decision does not run afoul of the collateral estoppel corollary of Double Jeopardy recognized in *Ashe v. Swenson*, 397 U.S. 436 (1970).

Mr. Smith asserts the Second District's decision is an objectively unreasonable

9

application of *Grady v. Corbin,* 495 U.S. 508 (1990).  Grady has been expressly overruled by the Supreme Court in *Dixon, supra*.

Mr. Smith's First Ground for Relief is without merit and should be dismissed with prejudice.


**Ground Two:  Lack of Subject Matter Jurisdiction**


In his Second Ground for Relief, Mr. Smith claims his prior acquittal on Count II deprived the Common Pleas Court of subject matter jurisdiction to try him again.  This Ground for Relief should also be dismissed with prejudice for a number of reasons.

First of all, it is barred by Smith's procedural default in failing to present it to the Second District Court of Appeals.  Although Smith claims in his Petition (ECF No. 1-1, PageID 14, ¶9(f)) that he raised this claim on appeal, the Second District found that his sole assignment of error was his Double Jeopardy claim.  *State v. Smith, supra,* ¶ 15.

The procedural default doctrine in habeas corpus is described by the Supreme Court as follows:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an adequate and independent state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause of the default and actual prejudice as a result of the alleged violation of federal law; or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Simpson v. Jones*, 238 F.3d 399, 406 (6th Cir. 2000).  That is, a petitioner may not raise on federal habeas a federal constitutional rights claim he could not raise in state court because of procedural default. *Wainwright v. Sykes*,

433 U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107, 110 (1982).  Absent cause and prejudice, a federal habeas petitioner who fails to comply with a State's rules of procedure waives his right to federal habeas corpus review.  *Boyle v. Million*, 201 F.3d 711, 716 (6th Cir. 2000)(citation omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986);  *Engle*, 456 U.S. at 110;  *Wainwright*, 433 U.S. at 87.  *Wainwright* replaced the "deliberate bypass" standard of *Fay v. Noia*, 372 U.S. 391 (1963).  *Coleman*, 501 U.S. at 724.

Secondly, the claim is without merit.  Smith made the same claim in his prior habeas corpus action regarding his prior conviction, Case No. 3:13-cv-065.  The undersigned was assigned that case and recommended the claim be dismissed:

> The Sixth Ground for Relief [lack of jurisdiction] is without merit. The offenses on which Smith was tried are felony offenses occurring in Montgomery County, Ohio. The Montgomery County Common Pleas Court has exclusive subject matter jurisdiction to try such offenses. The fact that they had been tried before did not deprive that court of jurisdiction after the court of appeals vacated the first set of convictions.
>
> Petitioner's Sixth Ground for Relief should be dismissed with prejudice.

*Smith v. Warden, So. Ohio Corr. Facility*, 2013 U.S. Dist. 38586, *21-22 (S.D. Ohio, Mar. 20, 2013), adopted 2013 U.S. Dist. LEXIS 69596 (S.D. Ohio May 16, 2013).  There has been no intervening Supreme Court law to the contrary.  Indeed, Mr. Smith does not argue his Second Ground for Relief.

**Conclusion**

Based on the foregoing analysis, it is respectfully recommended that the Petition be DISMISSED WITH PREJUDICE.  Because reasonable jurists would not disagree with this

conclusion, Petitioner should be denied a certificate of appealability and the Court should certify to the Sixth Circuit that any appeal would be objectively frivolous and therefore should not be permitted to proceed *in forma pauperis*.

October 17, 2016.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F). Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140, 153-55 (1985).